# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JAMES A. DAVISON,

        Petitioner,      :      Case No. 3:22-cv-269

  - vs -                                District Judge Michael J. Newman
                                         Magistrate Judge Michael R. Merz

TIM SHOOP, Warden,
  Chillicothe Correctional Institution,

                                    :
        Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner James Davison brings this action *pro se* pursuant to 28 U.S.C. § 2254 to obtain relief from his conviction in the Common Pleas Court of Montgomery County, Ohio. Relevant pleadings are the Petition (ECF No. 1), the State Court Record (ECF No. 5), the Return of Writ (ECF No. 6), and Petitioner's Reply (ECF No. 11).

**Litigation History**

In January 2019 a Montgomery County Grand Jury indicted Davison on one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A) with firearm specifications (Count 1), one count of murder in violation of Ohio Revised Code § 2903.02(B) with specifications (Count 2), two counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(2) with firearm specifications (Counts 3-4), one count of tampering with evidence in violation with Ohio

Revised Code § 2921.12(A)(1) (Count 5), one count of discharge of a firearm on or near prohibited premises in violation of Ohio Revised Code § 2923.162(A)(3)/(C)(4) with firearm specifications (Count 6), and one count of improper handling a firearm in a motor vehicle in violation with Ohio Revised Code § 2923.16(A) (Count 7). Davison was represented in the trial court by attorneys Jimmie Christon and Marshall Lachman. On September 26, 2019, a trial jury found Davison guilty as charged on all counts. After merging some counts and some specifications, the trial court sentenced Davison to an aggregate term of forty-eight years to life.

With new counsel Charles W. Slicer, III, Davison appealed to the Ohio Second District Court of Appeals raising the following Assignments of Error:

> ASSIGNMENT OF ERROR I:
>
> The trial court record failed to address or state sufficient evidence that law enforcement acted in objective good faith required for the application of the good-faith exception to the exclusionary rule, and the trial court record lacks sufficient evidence proving that reasonable, objective exigent circumstances existed that would have justified the circumvention of the Fourth Amendment search warrant requirement.
>
> ASSIGNMENT OF ERROR II:
>
> Appellant's Fifth, Sixth, and Fourteenth Amendment rights were violated by the trial court's decision to overrule defense counsel's objection to the CSU testimony previously admitted under the guise of an "exigent circumstances" warrant, resulting in unfair prejudice to the Defendant.
>
> ASSIGNMENT OF ERROR III:
>
> The trial court erred when it found Davison guilty of premeditated, Aggravated Murder, as there was no evidence proving the state's assertion that Davison committed the acts with the requisite prior calculation and design.

(Appellant's Brief, State Court Record, ECF No. 5, Ex. 17, PageID 76).

The State of Ohio cross-appealed claiming error in the trial court's merger decisions (Appellee's Brief, State Court Record, ECF No. 5, Ex. 18, PageID 91).

The Second District overruled each of Davison's assignments of error, but reversed the trial court's merger of the sentence for discharging a firearm on or near a prohibited premises into the sentence for aggravated murder. In relevant part the Second District decided:

> {¶ 2} Davison advances three assignments of error. First, he contends the trial court erred in failing to apply the exclusionary rule to preclude the State from introducing evidence of warrantless cell phone "ping" data. He argues that the trial court failed to address whether the good-faith exception to the exclusionary rule applied and that the State failed to demonstrate exigent circumstances to justify dispensing with a warrant. Second, Davison asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court overruled his objection at trial to the State's introduction of the cell phone data that was obtained without a warrant. Third, he claims his conviction for aggravated murder based on "prior calculation and design" was based on legally insufficient evidence and/or was against the manifest weight of the evidence.
>
> {¶ 4} The charges against Davison stemmed from the shooting deaths of two victims, Darion Harris and Ashley James, outside a Dayton-area nightclub in the early morning hours of April 21, 2018. The State's evidence at trial established that the victims attended the nightclub with Harris' brother and sister. They all arrived in a truck driven by Harris. Davison also was at the nightclub that evening. At some point, he exited the club and sat in his red Dodge Durango, which was parked near the entrance. Minutes later, the victims' group came out and began walking toward Harris' truck. Just as Harris and his three companions closed the truck's doors, Davison pulled up to the driver's side in his red Durango, fired numerous shots into Harris' vehicle, and sped away. On a surveillance video, broken glass can be seen flying from Harris' truck windows as bystanders flee. Harris and James were dead when police and medics arrived. Harris' brother and sister were unharmed.
>
> {¶ 5} Shortly after the shooting, detectives obtained the surveillance video, which they enhanced to help identify Davison as the person driving the red Durango. An informant provided police with Davison's cell phone number. Upon obtaining the number, investigators contacted his cell-phone service provider, Sprint, and obtained assistance tracking his phone by way of real-time cell-site

location "pinging." Investigators also promptly obtained a search warrant to track Davison's cell phone "ping" data. Although some tracking occurred before investigators obtained the warrant, police had the warrant when they tracked Davison's cell phone north to Sandusky, where he left his red Durango parked in front of his father's house. Davison then drove another vehicle back to Dayton as investigators tracked his cell phone, which eventually led them to his girlfriend's mother's house, where he was arrested.

{¶ 8} In his first assignment of error, Davison challenges the cell phone "ping" tracking that occurred before police secured a warrant to obtain the information. Davison asserts that the warrantless tracking violated the Fourth Amendment, that the trial court failed to make a finding regarding the applicability of the good-faith exception to the exclusionary rule, and that the State failed to establish exigent circumstances to justify circumventing the need for a warrant. Likewise, in his second assignment of error, Davison contends the trial court erred in overruling his objection to the State's introduction of testimony at trial about the warrantless "ping" tracking. In support of both assignments of error, Davison relies on *Carpenter v. United States*, ––– U.S. –––, 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018).

{¶ 9} Upon review, we find Davison's first two assignments of error to be without merit. In *Carpenter*, the U.S. Supreme Court held that the government's acquisition of historical cell phone location records spanning a period of 127 days constituted a Fourth Amendment search for which a warrant was required. The *Carpenter* court also recognized, however, that "case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances." *Id.* at 2222. In particular, the exigencies of a situation may justify dispensing with a warrant before accessing cell phone location records when there is a "need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence." *Id.* at 2223.

{¶ 10} In *State v. Snowden*, 2019-Ohio-3006, 140 N.E.3d 1112 (2d Dist.), we found *Carpenter* applicable to law enforcement's request for a service provider to "ping" the defendant's cell phone twice over two days. *Id.* at ¶ 33. We also found that *Carpenter* had retroactive applicability to the defendant's case, which remained pending when *Carpenter* was decided. *Id.* at ¶ 30-31. Nevertheless, we held that the warrantless pinging was permissible because exigent circumstances existed—namely the armed defendant had shot the victim and fled the scene. *Id.* at ¶ 37. We also found the good-faith

exception to the exclusionary rule applicable because when police pinged the defendant's cell phone without a warrant, such "conduct was lawful under both federal and state law in this jurisdiction" *Id.* at ¶ 38, *Carpenter* had not yet been decided, and existing precedent held that a warrant was not required to obtain cell phone ping data because individuals had no reasonable expectation of privacy in such information. *Id.* at ¶ 38-41.

{¶ 11} In the present case, the shooting occurred at approximately 3:34 a.m. on April 21, 2018. (Trial Tr. at 175, 676.) Later that morning, police learned Davison's identify after reviewing a surveillance video, and they obtained his cell phone number. (*Id.* at 607-610.) After determining that Sprint was Davison's cell-phone carrier, police contacted Sprint and requested real-time "exigent circumstances ping[ing]" of his phone as well as 48 hours of historical call details. (*Id.* at 610-611.) The initial information police received from this pinging provided only a "general area" where the phone was located. It was not specific enough to find Davison. (*Id.* at 615.)

{¶ 12} That same morning, detective Brad Daugherty began preparing a search-warrant application to track Davison's cell phone. (*Id.* at 380-381.) After Daugherty obtained the warrant later that day, police still could not pinpoint Davison's location because the ping radius was too large. (*Id.* at 382.) On the night of April 21, 2018 into the morning of April 22, 2018, however, police tracked the phone leaving Dayton and traveling to Sandusky. (*Id.*) Investigators located an address for Davison's father in Sandusky, and the red Durango was observed parked in front of Davison's father's house on the morning of April 22, 2018. (*Id.* at 382-383.) The red Durango remained parked in Sandusky while Davison's cell phone was tracked back to Dayton on April 23, 2018. (*Id.* at 384.) Police tracked the phone to Davison's girlfriend's mother's house, where they found him and arrested him. (*Id.* at 385-386.)

{¶ 13} On the record before us, we are unpersuaded that the trial court erred in allowing testimony about the warrantless tracking of Davison's cell phone. We reach this conclusion for at least three reasons. First, Davison never filed a motion to suppress related to the warrantless tracking. On appeal, he claims no suppression motion was filed because the State did not disclose the warrantless tracking before trial. The record reflects, however, that the warrantless tracking was addressed in a police report that was part of discovery. It stated that "exigent circumstance information and phone pings" had been requested from Sprint while detective Daugherty prepared a search-warrant application. (*Id.* at 629.)

Under Crim.R. 12(C), a request to suppress evidence on the basis that it was illegally obtained must be made through a pretrial motion. By failing to file a pretrial suppression motion raising the issue, Davison has waived all but plain error.

{¶ 14} Second, we have no trouble concluding that exigent circumstances justified initially dispensing with a warrant and pinging Davison's cell phone as soon as his name and phone number were obtained. As the U.S. Supreme Court recognized in *Carpenter*, the need to pursue a fleeing suspect can constitute an exigent circumstance sufficient to overcome the warrant requirement. That was true in *Snowden*, where this court found exigent circumstances to allow warrantless pinging after an armed defendant shot the victim and fled the scene. We reach the same conclusion in the present case, which involved an armed Davison fleeing the scene in his red Durango after shooting and killing two people. The trial court did not err in finding exigent circumstances when Davison objected at trial to the warrantless pinging of his cell phone. (Trial Tr. at 613-614.)

{¶ 15} Third, we have no doubt that the good-faith exception to the exclusionary rule applies. When police obtained Davison's cell-site location information, the U.S. Supreme Court had not yet decided *Carpenter*. At that time, the law in this jurisdiction permitted warrantless pinging of a suspect's cell phone. *See*, *e.g.*, *State v. Taylor*, 2d Dist. Montgomery No. 25764, 2014-Ohio-2550, ¶ 7 (finding no reasonable expectation of privacy in the pings emitted from a suspect's cell phone); *United States v. Carpenter*, 819 F.3d 880, 888 (6th Cir.). Evidence obtained in reasonable reliance on binding precedent is not subject to suppression under the exclusionary rule. *Snowden*, 2019-Ohio-3006, 140 N.E.3d 1112, at ¶ 39, quoting *Davis v. United States*, 564 U.S. 229, 241, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

{¶ 16} For each of the foregoing reasons, we see no error in the trial court's allowing testimony about the pinging of Davison's cell phone that occurred for a period of time before police obtained a warrant. Davison's first and second assignments of error are overruled.

*State v. Davison*, 2021-Ohio-728 (Ohio App. 2nd Dist. Mar. 12, 2021).

The Supreme Court of Ohio granted leave for a delayed appeal for which Davison continued to be represented by Attorney Slicer who raised the following propositions of law:

> **Proposition of Law No. 1:** Did sufficiently objective exigent circumstances exist to justify the circumvention of the Fourth Amendment search warrant requirement?
>
> **Proposition of Law No. 2:** Did the Trial Court err in overruling Defense Counsel's objection to the CSLI testimony previously admitted under the guise of exigent circumstances, resulting in prejudice to Appellant, by failing to apply the holding of *Carpenter v. U.S.* 138 S.Ct. 2206 to Appellant's case?

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 5, Ex. 24, PageID 187.) The Supreme Court, however, declined to exercise jurisdiction over Davison's delayed appeal. *Id.* at Ex. 26.

On remand the trial court dealt with the merger errors found by the Second District and re-sentenced Davison to fifty-one years to life. He appealed, but the Second District affirmed (State Court Record, ECF No. 5, Ex. 31). Davison did not appeal further to the Ohio Supreme Court, but filed his Petition for Habeas Corpus in this Court, pleading the following Grounds for Relief:

> **Ground One**: Petitioner was denied the Constitutional Right to the Assistance of Counsel at the trial court level as guaranteed by the Sixth Amendment to the United States Constitution.
>
> **Supporting Facts:** Where a lawyer as in this case does not request a suppression hearing on matters that have intrinsic value as to the propriety of the state's search of his personal and private property i.e. his phone, triggers questions concerning the exclusionary rule which bars the admissibility of items seized during unconstitutional search knowledge acquired during such a search. An offshoot of the rule is the "fruit of the poisonous tree" doctrine, which bars evidence which, though not obtained in the illegal search, was derived from information or items obtained in the search. The doctrine "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary [illegally obtained] evidence"). The doctrine ensures that the government cannot achieve indirectly what it is forbidden to accomplish directly. As Justice Frankfurter articulated, "To forbid the direct use of methods but to put no curb on their full indirect use would only invite the

very methods deemed inconsistent with ethical standards and destruction of personal liberty.

The fact that this question can't be answered to anyone's satisfaction is because the trial attorney never requested a suppression hearing in this case to the detriment of his client.

**Ground Two**: Appellate Counsel failed to assist petitioner in his appeal of the trial court proceedings where appellate counsel recognized that the issue involved in the case hinged on the police investigation and the warrantless search of petitioner's cell phone. Appellate counsel challenges the cell phone "ping" tracking that occurred before police secured a warrant to obtain the information. Appellate counsel asserted that the warrantless tracking violated the Fourth Amendment, that the trial court failed to make a finding regarding the applicability of the good-faith exception to the exclusionary rule. But did not challenge that trial counsel failed to request a suppression hearing which would have made appellate counsel's argument about the illegal search ripe for appeal.

**Supporting Facts:** Petitioner's supporting facts lie with the Opinion of the Appeals Court where the Court states at paragraph 13:

> *P13] On the record before us, we are unpersuaded that the trial court erred in allowing testimony about the warrantless tracking of Davison's cellphone. We reach this conclusion for at least three reasons. First, Davison never filed a motion to suppress related to the warrantless tracking. On appeal, he claims no suppression motion was filed because the State did not disclose the warrantless tracking before trial. The record reflects, however, that the warrantless tracking was addressed in a police report that was part of discovery. It stated that "exigent circumstance information and phone pings" had been requested from Sprint while detective Daugherty prepared a search-warrant application. (*Id*. at 629.) Under Crim.R.12(C), a request to suppress evidence on the basis that it was illegally obtained must be made through a pre-trial motion. By failing to file a pre-trial suppression motion raising the issue, Davison has waived all but plain error.

Had appellate counsel reviewed the record he would have not made the outlandish claim in the appellate brief that: "On appeal, he claims no suppression motion was filed because the State did not disclose the warrantless tracking before trial, this error is attributed

to appellant, but should rightfully be attributed to appellate counsel, solidifying petitioner's Ground Two claim.

**Ground Three**: Appellate counsel failed to assist Petitioner in the appeal to the Ohio Supreme Court where the Appellate Court's argument was supported by United States Supreme Court Precedence [sic].

**Supporting Facts:** Petitioner's support comes directly from the Court of Appeals decision. See: paragraph 8

> [*P8] In his first assignment of error, Davison challenges the cell phone "ping" tracking that occurred before police secured a warrant to obtain the information. Davison asserts that the warrantless tracking violated the Fourth Amendment, that the trial court failed to make a finding regarding the applicability of the good-faith exception to the exclusionary rule, and that the State failed to establish exigent circumstances to justify circumventing the need for a warrant. Likewise, in his second assignment of error, Davison contends the trial court erred in overruling his objection to the State's introduction of testimony at trial about the warrantless "ping" tracking. In support of both assignments of error. Davison relies on *Carpenter v. United States* ___U. S. ___. 138 S. Ct. 2206 201 L. Ed.2d 507 (2018).
>
> [*P9] Upon review, we find Davison's first two assignments of error to be without merit. In *Carpenter*, the U. S. Supreme Court held that the government's acquisition of historical cell phone location records spanning a period of 127 days constituted a Fourth Amendment search for which a warrant was required. The Carpenter court also recognized, however, that "case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances." *Id*. at 2222. In particular, the exigencies of a situation may justify dispensing with a warrant before accessing cell phone location records when there is a "need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence." Id. at 2223."

The Court of Appeals decision states, see: paragraph 10

> [*P10] In *State v. Snowden* 2019-0hio-3006 140 N.E.3d 1112 2d Dist., we found *Carpenter* applicable to law enforcement's request for a service provider to "ping" the defendant's cell phone twice over two days. *Id*. at ¶33. We also found that *Carpenter* had retroactive applicability to the defendant's case, which remained pending when *Carpenter* was decided. Id. at ¶30-31. Nevertheless, we held that the warrantless pinging was permissible because exigent circumstances existed-namely the armed defendant had shot the victim and fled the scene. *Id*. at ¶37. We also found the good-faith exception to the exclusionary rule applicable because when police pinged the defendant's cell phone without a warrant, such "conduct was lawful under both federal and state law in this jurisdiction." *Id*. at ¶38, *Carpenter* had not yet been decided, and existing precedent held that a warrant was not required to obtain cell phone ping data because individuals had no reasonable expectation of privacy in such information. *Id*. at ¶38-41."

> The last line of the decision of the appeals court is erroneous and should have been challenged in the Ohio Supreme Court.

(Petition, ECF No. 1).

## Analysis

**Ground One:  Denial of Assistance of Trial Counsel**

In his First Ground for Relief, Davison asserts he did not receive the assistance of counsel guaranteed by the Sixth Amendment when his trial attorney failed to file a motion to suppress the results of warrantless cellphone pinging.

Davison wants to distinguish this from a claim that he received **ineffective** assistance of trial counsel.  He writes

> A reading of Petitioner's GROUNDS presented to the District Court makes no mention of ineffective assistance of counsel, which is of

> extreme importance, because he makes no claim that either trial counsel nor appellate counsel were ineffective in their representation, instead petitioner claims that both trial and appellate counsel never ASSISTED in his defense and petitioner will show how that is so in the following arguments.

(Reply, ECF No. 11, PageID 1173-74). This argument recapitulates what Davison says in the Petition:

> Petitioner's Sole Argument which encapsulates the Three Grounds Raised herein, all revolve around the issue that Petitioner never received the assistance of Counsel guaranteed by the Sixth Amendment to the United States Constitution.

(Petition, ECF No. 1, PageID 3).

This is a verbal distinction which makes no difference in law. Although the Sixth Amendment itself does not use the words "effective" or "ineffective," the courts have long held that what it guarantees is the effective assistance of counsel, not just the presence of an attorney who is designated as defendant's attorney. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).

To prevail on a Sixth Amendment claim of denial of assistance of counsel, then, a petitioner must meet the standard of *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

Respondent asserts this ground for relief is procedurally defaulted because it was never fairly presented to the Ohio courts, either on direct appeal or in a petition for post-conviction relief under Ohio Revised Code § 2953.21. Davison does not contradict this assertion and it is plainly true: no motion to suppress the pinging data was ever filed and the failure to raise it was not asserted to be ineffective assistance of trial counsel on direct appeal. Because the claim was evident on the face of the appellate record, Davison was bound to bring it there or default it. *State v. Perry,* 10 Ohio St. 2d 175 (1967). Even assuming it could have survived that default and be considered in post-conviction, Davis never filed a post-conviction petition.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

13

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

Ohio has a relevant rule: a claim of ineffective assistance of trial counsel which can be adjudicated on direct appeal must be raised in that manner. *State v. Perry, supra*. Moreover, a claim that evidence should be suppressed must be raised by a pre-trial motion to suppress. Ohio R. Crim. P. 12(C). The Second District enforced both of these rules against Davison and he has

not shown cause and prejudice to excuse the default. Hence his claim that he was deprived of the assistance of counsel at trial should be dismissed with prejudice.

**Ground Two: Denial of the Assistance of Counsel on Direct Appeal**

In his Second Ground for Relief, Davison asserts he was denied the assistance of counsel on direct appeal when appellate counsel failed to assert trial counsel performed deficiently by not failing a motion to suppress the warrantless ping data. He again attempts to distinguish denial of assistance from denial of effective assistance, but the distinction has no more meaning at the appellate level than the trial level.

The Sixth Amendment guarantees effective assistance of counsel on direct appeal of right. *Evitts, supra*. The *Strickland* standard states above applies at the appellate level as well. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

Ohio provides a method for challenging the denial effective assistance of counsel on direct appeal which is by filing an application to reopen under Ohio R. App. P. 26(B). *State v. Murnahan*, 63 Ohio St. 3d 60 (1992); *Carter v. Mitchell,* 693 F.3d 555, 564 (6th Cir. 2012). However, Davison has never filed such an application and the time within which he could do so is long past. Because it routinely enforced that timeliness rule, there is little doubt the court of appeals would do so in this case if Davison attempted a 26(B) application as this juncture. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009). Davison's claim that his appellate attorney did not provide the assistance

guaranteed by the Sixth Amendment should also be dismissed as procedurally defaulted.

**Ground Three: Denial of Assistance of Counsel on Appeal to the Supreme Court of Ohio**

Finally, Davison claims he was denied the constitutionally-guaranteed assistance of counsel on his appeal to the Supreme Court of Ohio. However, there is no such constitutional guarantee. The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

Davison's Ground Three should therefore be dismissed for failure to state a claim which is cognizable in habeas corpus.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

January 2, 2023.

s/ *Michael R. Merz*
United States Magistrate Judge
